IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IRIS KITCHEN, <br><br> Plaintiff, <br><br> v. <br><br> DEVELOPMENTAL SERVICES OF NEBRASKA, INC., AUTISM CENTER OF NEBRASKA, INC., and OMNI BEHAVIORAL HEALTH, AND ANGELA MITCHELL, <br><br> Defendants. | 8:20CV08 <br><br> ORDER |

This matter is before the Court on Defendant Angela Mitchell's ("Mitchell") Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. of Civ. P. 12(b)(1) and, alternatively, for failure to state a claim under Fed. R. of Civ. P. 12(b)(6). Filing No. 74. Mitchell also presents an argument grounded in *res judicata* and collateral estoppel based on this Court's dismissal without prejudice of a previous suit initiated by Plaintiff, Iris Kitchen ("Kitchen") against Mitchell, among other defendants, arising from the same series of events that is at issue in the instant action. Filing No. 76; *see* 8:19CV107, Filing No. 60. Mitchell asks the Court to dismiss Kitchen's claim against her with prejudice. Filing No. 76.

In this suit, Kitchen alleges "discrimination in employment in violation of the Civil Rights Act of 1964, discrimination in contractual benefits in violation of 42 U.S.C. § 1981, retaliation for engaging in protected conduct in violation of 42 U.S.C. § 2000e 3(a), as well as breach of contract, unjust enrichment, and emotional distress under Nebraska state law." Filing No. 45; *see also* Filing No. 1. As to Mitchell, on the pleadings, Kitchen

1

raises only the claim of intentional infliction of emotional distress ("IIED") under Nebraska law. Filing No. 1.

Kitchen alleges that she contracted with the defendants, Developmental Services of Nebraska ("DSN"), Autism Center of Nebraska ("ACON"), and OMNI Behavioral Health ("OMNI") to provide foster care, pursuant state benefits, for two individuals with developmental disabilities. Filing No. 1 and Filing No. 45. Mitchell is the unpaid, court-appointed guardian for the two individuals who were removed from Kitchen's care. Filing No. 76.

## BACKGROUND

This case arises out of a dispute regarding Kitchen's provision of habilitation services to the aforementioned individuals as an independent contractor with ACON, and later DSN. Filing No. 45. After an alleged error by the Nebraska Department of Health and Human services resulted in Kitchen being overpaid by $5,632.51, "DSN sought reimbursement of the overpayment" pursuant to the terms of its contract with Kitchen. Filing No. 45.

In June of 2018, there was a dispute between Kitchen and DSN regarding the execution of a new contract for Kitchen's continued status as an independent contractor with DSN, which Kitchen allegedly refused to sign "until certain conditions were met." Filing No. 45. Kitchen claims that she received messages from two of DSN's employees on June 29, 2018, alerting her to the fact "that the two clients were being removed from [Kitchen's] home because she refused to sign the new contract" with DSN. Filing No. 45; Filing No. 8. Kitchen claims that she responded to the employees' messages, stating that she would sign the contract. However, the employees allegedly told Kitchen that Mitchell

had already made the decision to proceed with removal because she "didn't want [Kitchen] providing services anymore." Filing No. 8. The two individuals were ultimately removed from Kitchen's care on or around June 30, 2018. Filing No. 45.

## STANDARD OF REVIEW

Jurisdiction is a threshold issue for this Court. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-96 (1998); see also Arbaugh v. Y & H Corp., 546 U.S. 500, 507 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."). The Court is obligated to question its subject matter jurisdiction before proceeding to the merits of a plaintiff's case. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1990). Under the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. Pro. 12(h)(3).

Federal courts can properly assert jurisdiction under 28 U.S.C. § 1332, commonly referred to as "diversity of citizenship" jurisdiction, when "the citizenship of each plaintiff is different from the citizenship of each defendant." Ryan v. Schneider Nat'l Carriers, Inc., 263 F.3d 816, 819 (8th Cir.2001) (citation omitted). In addition, the amount in controversy must be greater than $75,000.00 for diversity of citizenship jurisdiction. 28 U.S.C. § 1332(a). Federal courts are also empowered to exercise subject matter jurisdiction where a plaintiff asserts "[a] non-frivolous claim of a right or remedy under a federal statute," commonly referred to as "federal question" jurisdiction. Northwest South Dakota Prod. Credit Ass'n v. Smith, 784 F.2d 323, 325 (8th Cir.1986).

3

One limit on the Court's subject matter jurisdiction is a legal principle known as the domestic relations exception. *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994). With respect to family law matters, the domestic relations exception divests the federal courts of jurisdiction over a narrow range of cases implicating domestic relations issues, such as divorce, allowance of alimony, child custody, and child support. *See Wallace v. Wallace*, 736 F.3d 764, 766 (8th Cir. 2013). Even "when a cause of action closely relates to but does not precisely fit into the contours of an action for divorce, alimony or child custody, federal courts generally will abstain from exercising jurisdiction." *Kahn*, 21 F.3d at 861. This doctrine precludes federal suits involving "a remedy which is essentially domestic—where, in addressing the same conduct involved in a state domestic proceeding, the effect of a remedy in the federal suit is to modify, nullify, or predetermine the domestic ruling of the state proceeding." *Wallace*, 736 F.3d at 767. No matter how styled, the domestic relations exception disallows domestic claims "cloaked in the 'trappings' of another type of" a federal claim. *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir. 2003) (quoting *Congleton v. Holy Cross Child Placement Agency, Inc.*, 919 F.2d 1077, 1078–79 (5th Cir.1990)).

The party seeking to invoke federal jurisdiction carries the burden of proof on that issue. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). In a factual attack on the jurisdictional allegations of the complaint, the court can consider competent evidence such as affidavits and deposition testimony in order to determine the factual dispute. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

## DISCUSSION

As explained above, a federal district court must determine that it has subject matter jurisdiction before considering the merits of a case. See *Kokkonen*, 511 U.S. at 377 (1990). A plaintiff may invoke subject matter jurisdiction by either alleging facts that: (1) meet the requirements as to diversity jurisdiction under 28 U.S.C. § 1332; or (2) demonstrate that a question arising under the United States Constitution, treaties, or federal law predominates the dispute pursuant to 28 U.S.C. § 1331.

### 1. *Diversity Jurisdiction*

This Court lacks subject matter jurisdiction arising from the parties' complete diversity under 28 U.S.C. § 1332. Here, the Court noted in its initial review of the plaintiff's Complaint that Kitchen is a "citizen of the state of Nebraska." Filing No. 16. The Complaint alleges only that Mitchell "is a citizen of the United States of America," however, Mitchell asserts that based on the "addresses utilized in the Complaint and Summons it is apparent that all parties," including Mitchell, are domiciliaries of Nebraska. This is not a particularly compelling argument, considering Mitchell also asserts that she was never properly served because the address provided in the summons is for an entity at which she is not employed. However, Mitchell did allege that she is a citizen of Nebraska in her Motion to Dismiss. Filing No. 74. Further, there is a presumption that matters are outside a federal court's "limited jurisdiction" and the party asserting jurisdiction bears the "the burden of establishing the contrary." *Kokkonen*, 511 U.S. at 377 (1990). As Kitchen did not plead facts adequate to affirmatively invoke diversity jurisdiction in her Complaint, the Court is satisfied that this burden has not been met.

5

### *2. Federal Question and Supplemental Jurisdiction*

This Court also lacks subject matter jurisdiction to hear Kitchen's claims against Mitchell based on the centrality of a federal question and under the doctrine of supplemental jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1367, respectively.

The U.S. Supreme Court has held that exercising federal question jurisdiction is appropriate where "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27–28 (1983)). A federal court properly exercising federal question subject matter jurisdiction "also has supplemental jurisdiction (formerly known as pendent and ancillary jurisdiction) over any alleged state law claims arising from the same core of operative facts." *McNerny v. Nebraska Pub. Power Dist.*, 309 F. Supp. 2d 1109, 1114 (D. Neb. 2004) (citing *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 164 (1997).

Supplemental jurisdiction is governed by 28 U.S.C. § 1367. Unless supplemental jurisdiction is limited by a federal statute, including sections (b) and (c) of § 1367 itself, a federal district court may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction also extends to "claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). However, federal courts "may decline to exercise supplemental jurisdiction over" such a claim if it involves

6

a "novel or complex issue of state law," if it "substantially predominates" the matter, if "the district court has dismissed all claims over which it has original jurisdiction," or where there are compelling and "exceptional circumstances" militating toward declining jurisdiction. 28 U.S.C. § 1367(c).

Section (a) of 28 U.S.C. § 1367 "is a broad jurisdictional grant, with no distinction drawn between pendent-claim and pendent-party cases." *Exxon Mobil Corp. v. Allapattah Servs.*, Inc., 545 U.S. 546, 559 (2005) (holding that the enactment of 28 U.S.C. § 1367 displaced the U.S. Supreme Court's holding that a federal district court lacked jurisdiction over a case involving both federal claims against a defendant and "state-law claims against additional defendants not otherwise subject to federal jurisdiction" in *Finley v. United States,* 490 U.S. 545 (1989); thus, where a "well-pleaded complaint in district court includes multiple claims, all part of the same case or controversy, and some, but not all, of the claims are within the court's original jurisdiction," the court has subject matter jurisdiction).

The only claim that Kitchen alleges against Mitchel is for IIED, which is a tort claim arising under state law. *See e.g. Roth v. Wiese,* 716 N.W.2d 419 (Neb. 2006). Mitchell argues that the Court should decline to extend pendant-party jurisdiction to resolve the IIED claim against her because it "raises a novel or complex issue of State law," 28 U.S.C. § 1367(c); specifically, liability "for infliction of emotional distress against a Guardian acting under the supervision of a Probate Court." Filing No. 76.

A claim of IIED against a state-court-appointed guardian for events arising directly from her work in that capacity involves complex considerations of both state law and policy. Further, resolving such a claim necessarily implicates decisions made by a state

7

court touching upon domestic relations.  Namely, the placement of individuals subject to a state-court guardianship and the fitness and performance of the individual appointed by the state Probate court to act as a guardian.  These factors amount to "compelling reasons for declining jurisdiction" over this supplemental claim.  Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff Kitchen's cause of action for IIED against Defendant Mitchell.

In view of this determination, the Court need not address the merits of Mitchell's contention arising under Fed. R. of Civ. P. 12(b)(6).

THEREFORE, IT IS ORDERED THAT:

1. Plaintiff Kitchen's claim for IIED against Defendant Mitchell is dismissed with prejudice.
2. Defendant Mitchell's Motion to Vacate Clerk's Entry of Default Judgment, Filing No. 64, is granted.
3. Defendant Mitchell's Motion to Supplement the record, Filing No. 78, is moot.

Dated this 19th day of April, 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge