IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IRIS KITCHEN,<br><br>                      Plaintiff,<br><br>     vs.<br><br>DEVELOPMENTAL SERVICES OF NEBRASKA, INC., AUTISM CENTER OF NEBRASKA, INC., and OMNI BEHAVIORAL HEALTH,<br><br>                      Defendants. | 8:20CV8<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendants' Omni Behavior's motion for summary judgment, Filing No. 211, Developmental Services motion for summary judgment, Filing No. 218, and Autism Center's motion for summary judgment, Filing No. 229. Plaintiff Iris Kitchen (hereinafter "Plaintiff") brought this lawsuit alleging discrimination in employment in violation of the Civil Rights Act of 1964, discrimination in contractual benefits in violation of 42 U.S.C. § 1981, retaliation for engaging in protected conduct in violation of 42 U.S.C. § 2000e 3(a), and breach of contract, unjust enrichment, and emotional distress under Nebraska state law. Filing No. 1 at 3–6.

## BACKGROUND

Plaintiff was contracted with Developmental Services of Nebraska (hereinafter "Developmental Services" or "DSN") and Autism Center of Nebraska (hereinafter "Autism Center" or "ACON") to provide foster care to minor children. Filing No. 1 at 2. Plaintiff worked for DSN on or about December 1, 2017, through June 30, 2018. Filing No. 8 at 4 and Filing No. 41-1 at 4–5. Prior to serving as an independent contractor for DSN,

1

Plaintiff was an independent contractor for ACON. Filing No. 27-1 at 2.[1] OMNI was all times relevant hereto a Nebraska non-profit organization which provided developmental disabilities services and habilitative services for individuals in the State or Nebraska. Affidavit of Morgan P. Kelly at ¶ 5–8; OMNIKitchen Independent Contractor's Agreement for M.W. (Doc #8 at 2/182); OMNIKitchen Independent Contractor's Agreement for J.W. (Doc #8 at 8/182). At all times relevant hereto, Nebraska Department of Health & Human Services ("NDHHS") contracted with OMNI to provide habilitation to individuals with developmental disabilities. *Id.* Under Plaintiff's contracts, it provides that: "Each party is an independent contractor and as such will not have the authority to bind or commit the other," additional language states that the agreement is not to be construed as creating "a joint venture, partnership, fiduciary, or agency relationship between the parties for any purpose." *Id.* at 4, 10.

ACON was, at all times relevant hereto, a Nebraska Non-Profit Corporation that provided habilitation, vocational rehabilitation, residential, community inclusion and other services to individuals with autism or other developmental disabilities. Filing No. 1 at 1 and Filing No. 27-1 at 1. DSN was at all times relevant hereto a Nebraska Non-Profit Corporation that provided habilitation services in a residential context to developmentally disabled individuals. Filing No. 1 at 1 and Filing No. 41-1 at 1.

Pursuant to the terms of the contract between DSN and Plaintiff, Plaintiff was to provide habilitation services to two individuals for whom DSN had recently been tasked with providing habilitation services. Filing No. 8 at 4, Filing No. 27-1 at 2, and Filing No. 41-1 at 2. Plaintiff alleges she was to be paid a certain percentage of a mandated rate

---

[1] This Court previously set out this Background in its Memorandum and Order, Filing No. 45.

per the contracts. Filing No. 1 at 2. According to Plaintiff, she was supposed to receive 80% of funds from the state for each of the clients and DSN was supposed to receive 20%. Filing No. 8 at 4. Defendants allegedly paid Plaintiff only 20% of the wages disbursed by the government for the care she gave to foster care minor children and allegedly kept 80% of the proceeds. Filing No. 1 at 2.

Moreover, Plaintiff is African American and contends that white contractors doing the same work received more than she did in violation of Title VII. Filing No. 1 at 3 and Filing No. 8 at 4. Prior to working for DSN, Plaintiff argues she was being paid more for the care of two clients in her home, and after starting with DSN in December 2017, she was paid less for the same clients. Filing No. 8 at 4. Plaintiff contends she filed with the Equal Employment Opportunity Commission ("EEOC") and asserts that she received a right to sue letter. Filing No. 1 at 3; *see also* Filing No. 8.

Plaintiff further alleges that she lost her contractual rights to compensation as a result of the behavior of the Defendants in violation of 42 U.S.C. § 1981. Filing No. 1 at 4. Plaintiff also claims the Defendants violated Title VII by terminating her in retaliation for protected activity, that is, reporting the conduct of the Defendants to the Legislature. *Id.* Plaintiff also alleges a claim for breach of contract for failure to pay her the government wage for her services. *Id.* at 5. Plaintiff further alleges an unjust enrichment claim because Defendants unjustly enriched themselves by depriving Plaintiff of her due compensation for services rendered. *Id.* As a result of Defendants' behaviors, Plaintiff alleges she has suffered emotional distress. *Id.*

According to Defendants, when one of the two individuals for whom DSN had been tasked with providing habilitation services was placed under the service and support of

3

DSN, an error was made by the Nebraska Department of Health and Human Services as to the proper rate of service authorization for care providers. Filing No. 27-1 at 2 and Filing No. 41-1 at 2. An incorrect rate of $214.06 per service unit was utilized by the Nebraska Department of Health and Human Services for the one individual in question when the proper rate per service unit should have been $13.35 for such individual. This error in service authorization rate as assigned by the Nebraska Department of Health and Human Services resulted in an overpayment by DSN to Plaintiff under Plaintiff's contract with DSN in the amount of $5,632.51. Filing No. 27-1 at 2 and Filing No. 41-1 at 2.

Pursuant to the terms of Plaintiff's contract with DSN, DSN sought reimbursement of the overpayment and entered into agreement with Plaintiff for such reimbursement. Filing No. 27-1 at 2 and Filing No. 41-1 at 2. In June of 2018, DSN began attempts to contact Plaintiff to have her execute a new contract to provide services as an independent contractor for DSN. Filing No. 27-1 at 2 and Filing No. 41-1 at 2. On or about June 27, 2018, Plaintiff allegedly informed Defendant that she would not be executing a new contract with DSN until certain conditions had been met. Filing No. 27-1 at 2 and Filing No. 41-1 at 2. According to Plaintiff, after receiving messages from DSN employees informing her that the two clients were being removed from Plaintiff's home because she refused to sign the new contract that was given to her on May 19, 2018, Plaintiff told DSN she would sign the contract. Filing No. 8 at 4. However, Plaintiff contends she was informed that the decision had already been made by APS Caseworker, Angela Mitchell, who did not want Plaintiff providing services anymore. *Id.* The two clients were ultimately removed from Plaintiff's home, and on or about June 30, 2018, Plaintiff's contract with

DSN expired and no new contract was executed or has been executed since. Filing No. 8 at 4, Filing No. 27-1 at 3, and Filing No. 41-1 at 2.

## STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint*, 736 F.3d 1134, 1136 (8th Cir. 2013). "Summary judgment is not disfavored and is designed for 'every action.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). In reviewing a motion for summary judgment, the court will view "all evidence and mak[e] all reasonable inferences in the light most favorable to the nonmoving party." *Inechien v. Nichols Aluminum, LLC*, 728 F.3d 816, 819 (8th Cir. 2013). Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Torgerson*, 643 F.3d at 1042; and see *Briscoe v. Cnty. of St. Louis, Missouri*, 690 F.3d 1004, 1011 (8th Cir. 2012) (stating that the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'").

Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not negate the nonmoving party's claims by showing "the

absence of a genuine issue of material fact." 477 U.S. at 325 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159 (1970)). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)); *see Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (stating "[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment) (quoting *Anderson*, 477 U.S. at 247–48). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

All three defendants filed motions for summary judgment. Defendants contend that plaintiff has failed to show there exists any material facts to support her claims against the defendants. Filing Nos. 211, 218 and 229.

The Court ordered the plaintiff to respond to these motions. Filing No. 248. The plaintiff responded to all three motions in Filing No. 243. Defendant argues that the plaintiff has failed to set forth any evidence to support her claim that defendants are not

6

entitled to summary judgment. The Court finds that plaintiff has failed to respond to any of defendant's statement of material facts, and more importantly, she has failed to substantiate her many allegations with evidence to support her claims.

A. OMNI

OMNI first argues that the plaintiff failed to file a charge of discrimination with the EEOC and/or the NEOC. The Court finds that plaintiff did not exhaust her administrative remedies against OMNI, and thus all Title VII causes of action are barred as a matter of law. Second, OMNI argues that plaintiff was an independent contractor who is not covered under Title VII. In this regard, independent contractors are not protected under Title VII. *Zeb v. Benes*, No. 4:20-CV-3075, 2021 WL 50454, at *2 (D. Neb. Jan. 6, 2021) (citing to *Wortham v. Am. Fam. Ins. Grp.*, 385 F.3d 1139, 1141 (8th Cir. 2004)). *See also*, *Omni Behav. Health*, No. A-20-482, 2021 WL 2325282 *5 (Neb. Ct.App. June 8, 2021) (factors of independent contractor versus an agent). The Court likewise determines that there is no showing on the part of the plaintiff that she is anything but an independent contractor. The contract is clear in that regard.

As for the § 1981 claim, plaintiff must show a prima facie case of discrimination. A prima facie case has four elements, which are: (1) The employee belonged to a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated employees. *Nagaraj v. Physician Network*, No. 4:20-CV-3021, 2021 WL 3032672, at *3 (D. Neb. July 19, 2021), citing to *Turner v. Gonzales*, 421 F.3d 688, 698 (8th Cir. 2005). Plaintiff has failed to introduce any evidence that she was treated differently than other similarly situated worker. In addition, there is no evidence presented that plaintiff was qualified to

7

perform her job. However, the Court assumes the defendants would not have entered into a contract with the plaintiff unless she was qualified.

Plaintiff's next claim against OMNI is one for breach of contract. To recover in a breach of contract action, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty. Henriksen v. Gleason, 263 Neb. 840, 847 (2002). Unless a contract is ambiguous, parol evidence cannot be used to vary its terms. Thrower v. Anson, 276 Neb. 102, 109 (2008). The meaning of an unambiguous contract is a question of law. Eagle Run Square II, L.L.C. v. Lamar's Donuts Int'l, Inc., 15 Neb. App. 972, 977 (2007). The alleged breach is that, pursuant to the contract, Defendants were to "provide Plaintiff with 80% of the wages provided to them by the government for her services." Filing No. 1, Complaint at ¶ 26; see also id. at ¶ 10. The Court can find no evidence in the record wherein OMNI promises to pay Plaintiff 80% of a sum at any time.[2] OMNI paid plaintiff a daily rate for her services and room and board. There is no evidence that OMNI failed to pay any of these payments.

Next, OMNI argues that there is no evidence of any damages at all. While plaintiff has requested several million in damages, there is no evidence of any damages.

Defendant also argues that the unjust enrichment claim is barred as a matter of law. Unjust enrichment is used to create an implied or quasi-contractual relationship in the absence of an express contract between parties and has been defined as the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.

---

[2] There is a provision that talks about 80% in the contract with DSM, but there is not one with OMNI.

*Kisicki v. Mid-Am. Fin. Inv. Corp.*, No. A-01-708, 2002 WL 31654490, at *6 (Neb. Ct. App. Nov. 26, 2002). A party cannot be liable for both breach of contract and unjust enrichment for the same conduct. *First Express Servs. Grp., Inc. v. Easter*, 286 Neb. 912, 928 (2013). Again, this claim is based on the 80% argument discussed above. The Court determines that there is no basis for this argument under the contract. There is zero evidence in this regard. Likewise, there is no basis for this argument under a claim for unjust enrichment. There is an express agreement herein, and it is binding on the parties.

Next, defendant contends that plaintiff's emotional distress claim also fails as a matter of law. *Brandon ex rel. Est. of Brandon v. Cnty. of Richardson*, 261 Neb. 636, 656 (2001) (to recover on a claim for IIED, Plaintiff must prove (1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it). There is no conduct alleged that rises to the level required for a claim for emotional distress. The Court finds that as a matter of law this claim is entitled to summary judgment.

Defendant argues that all causes of action are barred by the applicable statute of limitations. Plaintiff did not bring her claims until March 13, 2019, more than five years and seven months after Plaintiff ceased working with OMNI and the contract ended. Filing No. 1, Complaint, Case No. 8:19-cv-107. Plaintiff has made no argument for tolling. Plaintiff would have had to bring any of these causes of action within a 4 or 5 year window, and she failed to do so. Plaintiff contracted with OMNI in 2011 and the relationship

9

ceased in July of 2013. Plaintiff's Section 1981 cause of action is subject to the federal "catch all" statute of limitations of four years. *Jones v. Carter*, No. 8:19CV288, 2019 WL 3429821, at *2 (D. Neb. July 30, 2019) citing to *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). Plaintiff's breach of contract (written) claim is subject to a five-year statute of limitations period. Neb. Rev. Stat. § 25-205. Plaintiff's unjust enrichment cause of action is subject to the four-year statute of limitations period. *Schmidt v. Sportsman's Gallery, LLC*, No. A-21-008, 2022 WL 29478, at *9 (Neb. Ct. App. Jan. 4, 2022). Plaintiff's cause of action for emotional distress, which is construed as a claim for intentional infliction of emotional distress is subject to the four year statute of limitations under Neb. Rev. Stat. § 25-207. *Infante v. City of Hastings, No. A-19-211, 2019 WL 5884208, at *4 (Neb. Ct.App. Nov. 12, 2019)*, citing to *Kant v. Altayar*, 270 Neb. 501 (2005) (intentional infliction of emotional distress). Accordingly, summary judgment is likewise granted for this reason.

In summary, the Court finds insufficient evidence to support any of these claims against OMNI. Accordingly, summary judgment will be granted as to all claims.

B. DEVELOPMENT SERVICES

Development Services makes the same claim regarding Title VII as did OMNI, namely that TITLE VII does not protect independent contractors. For the reasons set forth herein with regard to OMNI, the Court finds that Title VII bars the action against Developmental Services. The same is true for the same reasons as to the claim against Development Services for the § 1981 claim.

With regard to the breach of contract claim, plaintiff's contract with DSN states that the "Company agrees to reimburse the Independent Contractor at the rate of 80% of the

NDHHS payment to Company." Filing No. 221, Ex. 1, Kanter Dec., Attachment A, p. 1., DSN Contract for Provision of Extended Family Home Services for J.W.; Filing No. 221, Attachment B, p. 1., DSN Contract for Provision of Extended Family Home Services for M.W.. The contract also says, however that "Reduction of NDHHS payment to Company for services provided under this Contract shall result in a corresponding reduction in payment by Company to Independent Contractor. The Independent Contractor agrees to make prompt repayment of funds recovered or payment of fines levied by NDHHS in relation to services and supports provided under this Contract." Filing No. 221, Ex. 1, Kanter Dec., Attachment A, p. 7., DSN Contract for Provision of Extended Family Home Services for J.W.; Filing No. 221, Attachment B, p. 7., DSN Contract for Provision of Extended Family Home Services for M.W.. NDHHS notified defendant that there was an overpayment to the plaintiff, as she was placed in an incorrect tier of funding. Pursuant to the contract, DSN sought to recover the funds overpaid to the plaintiff. This is the only allegation of breach of contract made by the plaintiff against this defendant. Accordingly, the Court finds as a matter of law that the contract clearly permitted the defendant to collect overpayment of funds levied by NDHHS. Further, plaintiff failed to provide any evidence that this was an incorrect assessment against the plaintiff or to in any way support her breach of contract claim.

As for plaintiff's unjust enrichment claim, and with regard to the emotional distress claim, these claims failure for the same reason already set forth with regard to OMNI.

Accordingly, the Court finds that summary judgment will be granted as to all of the claims made by the plaintiff against Developmental Services.

11

C.  AUTISM CENTER OF NEBRASKA

Defendant Autism Center makes the same arguments with regard to Title VII, as does OMNI, in terms of the independent contractor status.  For the same reasons, Autism contends that the plaintiff's § 1981 claim must fail as a matter of law, namely, there is no evidence to show that any contractors were treated differently.  Likewise, Autism Center argues that there is no basis for the breach of contract cause of action, as there is no evidence presented by the plaintiff to support the claim.  Autism Center likewise makes the same arguments as OMNI as to the Unjust Enrichment claims by the plaintiff that they are barred by the express agreement of the parties. And last, Autism Center of Nebraska also argues that the emotional distress claim fails as a matter of law.

The Court finds that all claims against Autism Center fail.  There is no evidence to support any of the claims, and the Court finds they fail as a matter of law for the reasons already stated in this Memorandum and Order.

**THEREFORE, IT IS ORDERED THAT:**

1.  OMNI's motion for summary judgment, Filing No. 211, is granted.

2.  DSN's motion for summary judgment, Filing No. 218, is granted.

3.  Autism Center's motion for summary judgment, Filing No. 229, is granted

4.  A Judgment in favor of the defendants and against the plaintiff shall be issued in conjunction with this Memorandum and Order.

Dated this 18th day of January, 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge